301 So.2d 158 (1974)
GRANGE MUTUAL CASUALTY COMPANY, Appellant,
v.
Samuel R. THOMAS and Byron Eugene McDowell, Appellees.
No. 74-75.
District Court of Appeal of Florida, Second District.
October 9, 1974.
G. Hunter Gibbons, Dart, Dickinson, O'Riorden, Gibbons & Quale, Sarasota, for appellant.
Daryl J. Brown, Rosin, Abel & Band, Sarasota, for appellee/Thomas.
Fletcher Brown, Arcadia, for appellee/McDowell.
McNULTY, Chief Judge.
Appellee Thomas, a non-participant observer of a family quarrel between appellee McDowell and others, was shot by McDowell who, it may be said, certainly didn't intend to injure Thomas even if it also be said he intended to shoot another.
Appellant insurance company, McDowell's homeowners liability carrier, denied *159 coverage under the exclusionary provision of the policy relating to bodily injury "... which is either expected or intended ..." on the part of the insured. (Italics ours.) In a severed trial the court below ruled there was coverage and entered judgment against the appellant insurance company to the extent thereof. We affirm.
Appellant concedes that the facts herein would clearly militate against it under the settled cases which hold that such facts are not within an exclusion relating to "intentional" injury caused by the insured.[1] It urges, however, that the exclusionary language in the policy before us relates also to an injury which should be "expected" by the insured, as distinguished from "intended" by him, and thus excludes those injuries which naturally and foreseeably flow (i.e., are "expected") from a wilful act intended albeit for a different end. We reject this contention. We see no difference in substance between the language of the exclusionary provision here and that in the policies limiting the exclusion simply to "intentional" injuries. The reasons for the judicial rejection of the "natural and foreseeable consequence" theory in the latter cases are no less valid in this one.[2]
Additionally, if we were to give the exclusion before us the meaning argued by appellant, then, by a parity of reasoning, we would have to exclude any injury from an unintentional tort which a given jury might categorize as being "expected" depending upon the degree of likelihood thereof under the facts and circumstances of the case. Conceivably, indeed, this might include an injury resulting from simple negligence and, under Florida law, could well include an injury resulting from gross negligence.[3] We're certain appellant doesn't suggest this.
In sum, therefore, as we perceive the law to be in these cases, unless the wrongful act complained of is intentionally directed specifically toward the person injured by such act the injury, as to that victim, is an accident or "occurrence" for which an insured tortfeasor may become legally answerable in damages as contemplated by the coverage provision of his homeowners liability policy.
In view whereof, the judgment appealed from should be, and it is hereby, affirmed.
HOBSON and BOARDMAN, JJ., concur.
NOTES
[1] See, e.g., Cloud v. Shelby Mutual Ins. Co. of Shelby, Ohio (Fla.App.3d, 1971), 248 So.2d 217, and Phoenix Insurance Company v. Helton (Fla.App.1st, 1974), 298 So.2d 177 and cases cited therein.
[2] Id.
[3] To illustrate, an act or omission is gross negligence in Florida if a reasonably prudent man would know it would probably and most likely result in injury to another. See, e.g., Carraway v. Revell (Fla. 1959), 116 So.2d 16. Also, cf. Glaab v. Caudill (Fla. App.2d, 1970), 236 So.2d 180.