407 So.2d 1063 (1981)
Larry Clinton DRAFFEN, Appellant,
v.
ALLSTATE INSURANCE COMPANY and Ronald Atherton, Appellees.
No. 81-550.
District Court of Appeal of Florida, Second District.
December 30, 1981.
*1064 Jeffrey H. Willis, Tampa, for appellant.
Frank H. Gassler and Barbara J. Paulson of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for appellee Allstate Ins. Co.
BOARDMAN, Acting Chief Judge.
Larry Clinton Draffen, defendant/cross-plaintiff in the trial court, appeals final judgments in favor of appellee/cross-defendant Allstate Insurance Company and plaintiff/appellee Ronald Atherton. We affirm.
Atherton filed a complaint against appellant and Allstate, under whose homeowner's policy appellant was insured, for damages caused when appellant, "while being chased by the Plaintiff, negligently and carelessly caused a gun to fire, striking the Plaintiff with a projectile in his neck and back." Appellant filed a cross-claim against Allstate. Allstate raised the affirmative defenses that the incident in question was not an occurrence as defined in the policy, that the gun was not fired negligently and carelessly, and that the policy did not apply "`to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.'" The trial court granted Allstate's motion for directed verdict and entered final judgments in favor of Allstate against Atherton and appellant. This appeal followed timely.
The facts are that on May 2, 1980, appellant robbed three women at gunpoint in the parking lot of the Sea Wolf Restaurant in Tampa. He stopped one Robert Clark and asked him to act as lookout while appellant robbed the women, but Clark refused and went into the restaurant to report the incident. Clark found Atherton, and the two of them went outside to look for appellant. When appellant saw them, he ran around the back of the restaurant and into a corner of the yard bordered by a chain link fence. It was very dark in that corner.
Considering the evidence in the light most favorable to appellant, as we must, appellant could not see his pursuers once he had run into the corner. However, he knew he was being chased and heard the voices of his pursuers. He shot his gun six times in their direction, jumped the fence, and made good his escape. Of the six shots fired, four met their mark. One struck Clark in the ribs. One hit Atherton in the face and knocked him to the ground, and then two more bullets struck him in the back.
The insurance policy issued by Allstate here provided in pertinent part:
Allstate agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence.
... .
This policy does not apply:
1. Under Coverage X  Family Liability and Coverage Y  Guest Medical Payments:
... .
(f) to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.
*1065 The term "occurrence," is specifically defined in the definitions portion of the policy, which provides: "`[O]ccurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage."
We agree with the trial court that one "would simply have to take leave of [one's] senses to conclude ... that this was an accident." If appellant had intended merely to frighten his pursuers, he could have fired at the ground or into the air. He did neither. Instead he fired in the direction of his pursuers with what in different circumstances might be termed commendable accuracy. It is clear that appellant most certainly did intend to kill or injure one or more of his pursuers, although he may not have expected as much success as he actually had.
We find Hartford Fire Insurance Co. v. Spreen, 343 So.2d 649 (Fla.3d DCA 1977), analogous. Spreen held that there was no coverage under a homeowner's liability insurance policy for injuries sustained by a plaintiff who had been struck by the insured following an altercation. In that case, the insured (Spreen) and his wife were guests at a party at which William King and his wife were also present. Spreen was dancing with another woman when King approached him and announced that he was going to make love to Spreen's wife. Spreen stopped dancing and struck King in the left eye, fracturing the orbital floor of King's eye. Spreen later testified that he intended to strike King, but not to damage King's face or eye and that he was reacting to King's crude remark.
Spreen was insured by a homeowner's liability policy, which covered the insured's legal obligation to pay damages for bodily injury caused by an occurrence. The policy defined "occurrence" as an "accident." The Third District reviewed the case law in this area and stated:
Running through all of these cases is an act of negligence by the insured, sometimes gross or even culpable negligence. But never has coverage been found under such policies where the insured's act was deliberately designed to cause harm to the injured party.
Id. at 651. See also Darragh v. Brock, 366 So.2d 801 (Fla. 1st DCA 1979). The cases relied on by appellant are inapposite.
Accordingly, the final judgments appealed are AFFIRMED.
OTT and RYDER, JJ., concur.