David R. DEAKYNE, Sr., Plaintiff,

v.

SELECTIVE INSURANCE COMPANY OF AMERICA, Defendant.

C.A. No. 96C–07–078–JEB.

Superior Court of Delaware, New Castle County.

Submitted: July 23, 1997.
Decided: Dec. 22, 1997.

James A. Erisman, of Wilmington, Delaware, for plaintiff.

Roger D. Landon, and Mary Anne McLane, of Wilmington, Delaware, for defendant.

## OPINION

BABIARZ, Judge.

This is the Court's decision on cross-motions for summary judgment. At issue in this motion is whether defendant, Selective Insurance Company of America, is required to defend and indemnify David Deakyne, Jr., from a claim that arose out of an alleged act of self-defense. Consistent with the follow-

ing, this Court concludes that Selective Insurance Company of America is required to provide a defense and indemnification [1] to the Deakynes consistent with the parties' insurance contract. Accordingly, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and defendant's cross-motion for summary judgment is DENIED.

## I.

Plaintiff, David Deakyne, Sr. ("Mr.Deakyne") is the owner of a property located in Dewey Beach, Delaware, which contains two structures. A house which the Deakynes use as there personal summer residence is located on the front of the property and behind this structure is a garage apartment which is apparently rented to vacationers.

On July 30, 1993, David Deakyne Jr. ("David"), who allegedly resides in the family house with his parents during the summer, was attending a party at the garage apartment. At approximately 2:00 a.m., as he was standing at the garage apartment, David saw two men standing on the house's second floor deck. David did not know the identity of these men or why they were standing on the deck. However, at that time, David thought his mother and sister were sleeping on the second floor of the residence.

Allegedly fearing for the safety of his mother and sister, David yelled twice to the two strangers to leave the deck. After the two failed to heed to his directions, David broke a beer bottle and proceeded up the stairs to "scare the men out of the residence." When David reached the top stair he was blinded by a flood light. Apparently, at that same time the two trespassers approached David, started to shove him, and struck him across the head with a bottle causing severe lacerations to David's head and face. In the subsequent struggle, one of the strangers, Brian Morris, was also injured. Brian Morris has filed a personal injury claim against David for these injuries. That suit is currently pending.

At the time of the altercation, Selective Insurance Company of America ("Selective") was the issuer of a home owner's insurance policy which covered the Deakynes' Dewey residence. This policy provides liability coverage which protects an insured from damages incurred by the insured as a result of "bodily injury" caused by an "occurrence." However, the policy specifically excludes coverage for bodily injuries which are "expected or intended" by the insured. The Deakynes submitted a claim to Selective pursuant to the liability provision in their home owner's insurance policy seeking a defense and indemnification from Morris's suit. Selective refused to provide coverage for the incident based on, *inter alia*, the "expected and intended" exclusion of the policy. According to Selective, because David "expected or intended" to cause bodily injury to Brian Morris, they do not have a duty to defend and indemnify the Deakynes in this matter. In response, Mr. Deakyne brought this declaratory judgment action.

Mr. Deakyne now moves for summary judgment arguing that the injuries that gave rise to the Morris suit do not fall within the "expected or intended" exclusion. According to Mr. Deakyne, David was defending himself, his family, and his property at the time of the altercation. Because David was acting in self-defense, his conduct cannot be deemed "expected or intended." In response, Selective has filed a cross-motion for summary judgment arguing David did not act in self-defense, and that even if David was acting in self-defense, Morris' injuries were "expected or intended" and thus excluded from coverage under the policy.

## II.

In order for this Court to grant summary judgment, there must be no genuine issues of material fact and the moving party must show he is entitled to judgment as a matter of law. *Borish v. Graham*, Del.Super., 655 A.2d 831 (1994). Furthermore, in deciding whether there is a genuine issue of material fact the evidence must be viewed in a light most favorable to the non-moving party. *Moore v. Sizemore*, Del.Supr., 405 A.2d 679 (1979). Thus, a party is entitled to summary

---

**1.** Indemnification in this case will of course depend on the outcome of the underlying litigation.

judgment if, reading the evidence in a light most favorable to the non-moving party, he can show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

This case, however, is submitted on a somewhat unusual basis. No discovery has taken place. Instead, in his opening brief, Mr. Deakyne set forth a statement of facts, which Selective agreed to in its Answering Brief, with two exceptions. These exceptions, whether David was a resident of the Dewey Beach house and whether Morris's presence on the Deakyne's deck was an entry onto the residence, would preclude the entry of summary judgment. In addition, Selective's position that David was not acting in self defense creates an issue of ultimate fact which prevents the granting of summary judgment. Even so, the record fairly raises an issue of law which is appropriate for the Court to address at this early state of the case.

## III.

■ In Delaware, the insured bears the initial burden of showing that the alleged loss is within the coverage provisions of the insurance policy. *E.I. du Pont de Nemours & Co. v. Admiral Insurance Co.*, Del .Super., C.A. No. 89C–AU–99, Steele, V.C., 1996 WL 111133 (Feb. 22, 1996), Mem.Op. at 1; *State Farm Fire and Casualty Co. v. Hackendorn*, Del.Super., 605 A.2d 3, 7 (1991). Once this burden is met, it then becomes the duty of the insurer to show that one of the policy exclusions apply. *Admiral*, at 1; *Hackendorn*, 605 A.2d at 7. The dispute in this matter concerns an exclusion in the Deakynes' home owner's insurance policy. The policy requires Selective to defend and indemnify the insured for liability that arises out of "bodily injury" to a third party unless such bodily injury was "expected or intended by the insured".

■ In determining whether an act of self-defense is "expected or intended" this Court is required to follow a two part test. *Camac v. Hall*, Del.Super., 698 A.2d 394 (1996). First, the court must analyze whether there is some credible evidence to support the insured's claim of self defense. *Id.* at 399.

Next, but only after the plaintiff has produced credible evidence to support a claim of self defense, the court must address the second part of the analysis: whether the insured is barred from recovering under the policy by the "expected or intended" act exclusion. *Id.*

In Delaware, self-defense is a subjective standard, judged by reference to the honest belief of the person claiming to act in self-defense. *Id.* at 399 (citing *Moor v. Licciardello*, Del.Supr., 463 A.2d 268, 272 (1983)). According to the *Camac* court, the evidence must show that the actor was not the aggressor, that the danger of harm was imminent and the response immediately necessary and, finally, that the victim engaged in some act that caused fear to the actor. *Camac* at 399. Because the evidence showed that the defendant simply walked up to the plaintiff, without warning, and "floored" him while he was standing at a urinal, the *Camac* court concluded that there was no credible claim of self-defense. *Id.* at 400.

■ At oral argument, this Court determined that the Deakynes produced sufficient evidence to support a claim that David was acting in self-defense. Unlike the facts in *Camac*, David did not simply walk up to Morris and attack him. To the contrary, the facts alleged indicate that it was late at night and David realized that there were two trespassers on his property. According to David, he feared for the safety of his mother and sister who he thought were in the house and twice demanded that the trespassers leave the property. Upon the strangers' refusal to leave the property, David ran up the stairs to confront them with the beer bottle to protect his property and his family. At that point, Brian Morris and his companion approached David, began to shove him, and then struck him in the head with a bottle causing severe lacerations to his head and face. Only after David received these injuries did he resort to physical force against the two trespassers. Based on these facts, this Court concludes that a reasonable jury could find that David was acting in self-defense when he injured Brian Morris. Consequently, only the second half of the *Camac*

analysis, determining whether an insured acting in self-defense is barred from recovering under the "expected or intended" act exclusion is addressed below.

The interpretation of an insurance contract is a matter of law. *Aetna Casualty and Surety Co. v. Kenner*, Del.Supr., 570 A.2d 1172, 1174 (1990), *rev'd on other grounds*, 652 A.2d 10 (1995). When a dispute exists regarding the language of an insurance contract, the court must give effect to the plain language of the policy. *E.I. du Pont de Nemours & Co. v. Allstate Insurance Co.*, Del.Supr., 686 A.2d 152, 156 (1996) (citation omitted). Any ambiguity in the language must be interpreted against the insurer. *Chris Episcopo Construction Co. v. International Underwriters Ins. Co.*, Del.Super., C.A. No. 86C–AP–63, Barron, J., 1991 WL 269937 (Nov. 6, 1991), Mem.Op. at 3. Such an ambiguity exists if the language is susceptible to two or more reasonable interpretations. *Id.* at 3. It is not sufficient that more than one interpretation can be suggested, but rather, all interpretations of the policy language "must reflect a reasonable reading of the contractual language." *Kenner*, 570 A.2d at 1174.

Selective argues that both Delaware's law on contract interpretation and the law of other jurisdictions leads one to conclude that liability sustained as a result of acts of self-defense fall within the "expected or intended" clause. According to Selective, the "expected or intended" language is clear and unambiguous. Selective contends that in order to trigger the exclusion there must simply be evidence that David committed an act intending to cause some injury. According to Selective, the exclusion then applies to any injury that was reasonably foreseeable to have occurred from that act. In this case, Selective suggests, David's act of breaking a beer bottle and going after the trespassers evidences an intent to commit some kind of injury, if only emotional harm and alarm. In

this situation one would anticipate that coming after someone with a dangerous instrument would provoke a fight regardless of who threw the first punch. Thus, although David may not have intended this particular injury to occur, the injury that occurred was reasonably foreseeable. Additionally, Selective urges this Court to accept the line of cases in other jurisdictions that hold self-defense is not an exception to this exclusion. According to Selective, these cases are based on two principles of law: (1) where the policy terms are unambiguous, the plain language governs, and (2) parties are free to contract and may include a contract provision which insures against injuries that occur as a result of actions taken in self-defense. Because Delaware courts have found this exclusion unambiguous and the Deakyne's insurance contract did not include a provision that insures against acts of self-defense, Selective argues, the exclusion applies in this case.

■ Whether an act of self-defense triggers the "expected or intended" exclusion of an insurance policy is an issue of first impression in Delaware.[2] This Court notes that there is a split in authority among those jurisdictions that have been confronted with this issue. *See* James L. Rigelhaupt, Jr., J.D., Annotation, *Acts in Self-Defense As Within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured*, 34 A.L.R.4th 761 (1984); 43 Am.Jur.2d *Insurance* §§ 708 & 709 (1982). However, this Court finds that injuries which arise as a result of an act of self-defense are not "expected or intended" by the insured. The "expected or intended" clause is designed to prevent persons from insuring themselves against their own intentionally tortious conduct. In Delaware, when one acts in self-defense, he is not acting in an intentionally tortious manner.

Selective urges this Court to adopt the reasoning of those jurisdictions which have

---

**2.** *Camac v. Hall*, Del.Super. 698 A.2d 394 (1996) is the only Delaware case to confront this issue. However, after finding the insured's acts were intentional and not in self-defense the court found it unnecessary to interpret the exclusion. However, in dicta, Judge Quillen did state that were he to rule on the issue he would be "in-

clined to view an established self-defense claim in this context as foreclosing a personal injury intended by the insured." *Camac*, at 398. Thus, apparently suggesting that injuries while an insured acts in self-defense are not intentional or expected within the exclusion.

concluded that injuries incurred from acts of self-defense are "expected or intended" within the meaning of the policy. *Grange Insurance Co. v. Brosseau,* Wash.Supr., 113 Wash.2d 91, 776 P.2d 123, 127 (1989); *Auto–Owners Insurance Co. v. Harrington,* Mich. Supr., 455 Mich. 377, 565 N.W.2d 839, 841 (1997). According to these courts, applying the plain meaning of this language leads to the conclusion that when an insured acts with the intent or expectation that bodily injury will occur, the resulting injury is "expected or intended" by the insured. *Harrington,* 565 N.W.2d at 842; *Georgia Farm Bureau Mutual Ins. Co. v. Machett,* Ga.App., 207 Ga.App. 588, 428 S.E.2d 636, 637 (1993); *State Farm Fire & Casualty Co. v. Marshall,* Fla.Supr., 554 So.2d 504, 505 (1989); *Brosseau,* 776 P.2d at 127.

The fact that the insured was acting in self-defense is inconsequential in this line of cases because, according to these courts, self-defense is an issue of motive or justification and it does nothing to negate the intent of the insured. *Harrington,* 565 N.W.2d at 842; *Brosseau,* 776 P.2d at 127; *Marshall,* 554 So.2d at 505; *Home Insurance Co. v. Neilsen,* Ind.Supr., 165 Ind.App. 445, 332 N.E.2d 240, 244 (1975); *State Farm Fire and Casualty Co., v. Caldwell,* Fla.App., 630 So.2d 668, 669 (1994); *Eubanks v. Nationwide Mutual Fire Ins. Co.,* Ga.App., 195 Ga.App. 359, 393 S.E.2d 452, 455 (1990); *Stein v. Massachusetts Bay Ins. Co.,* Ga.App., 172 Ga.App. 811, 324 S.E.2d 510, 511 (1984). Under this reasoning, the "expected or intended" exclusion is triggered as long as the insured clenches his fist and hits the aggressor, *Caldwell,* 630 So.2d at 669, or points a gun and shoots the aggressor, *Harrington,* 565 N.W.2d at 839, or engages in any conduct intending to cause some injury to the aggressor, *Marshall,* 554 So.2d at 505.

However, the courts of this State have never endorsed such a narrow interpretation of the "expected and intended" exclusion. In *Farmer in the Dell Enterprises, Inc. v. Farmers Mutual Ins. Co. of Delaware, Inc.,* Del.Supr., 514 A.2d 1097 (1986), the Supreme Court of this State made it clear that in order to trigger the "expected or intended" language, the conduct of the insured must be intentionally tortious. Indeed, the Court explicitly referred to this exclusion as the "intentional tort" exclusion and stated that under this exclusion there must be some "showing of an intentional act coupled with an intent to cause some injury or damage so long as it is reasonably foreseeable that the damage which actually followed would in fact occur." *Id.* at 1099. The Supreme Court explained that "[t]his standard simply applies the accepted principle of tort law that where there is *intentionally tortious conduct,* ordinary consequences as well as specifically intended consequences of that conduct are deemed intended." *Id.* (emphasis added).

In order to determine whether an insured's conduct is intentionally tortious one cannot simply determine whether the actor intended to cause injury. As one well respected legal commentator noted:

> The intent with which tort liability is concerned is not necessarily a hostile intent, or desire to do any harm. *Rather it is an intent to bring about a result which will invade the interest of another in a way that the law forbids.* The defendant may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good.

PROSSER AND KEETON ON TORTS, § 8 at 36 (5th ed.1984) (emphasis added); *See also* 74 AM. JUR.2D *Torts* § 6 (1974). Thus, in order to trigger the "expected or intended" exclusion an insured must intend a result that is wrongful in the eye of the law of torts.

This proposition was squarely accepted by the *Farmer in the Dell* court when it found that a boy, who set fire to a pile of trash and proceeded to push the burning pile of trash against a restaurant, "expected or intended" the resulting damage to the building. Adopting the lower court's analysis, the court stated:

> The fact that [the minor] intended damage only to trash is irrelevant. *His conduct was clearly illegal and an infringement upon the property interest, however insignificant, of another person.* The additional act of setting the burning trash next to a

building rendered it entirely foreseeable that additional damage would occur.

*Farmer in the Dell,* 514 A.2d at 1100 (emphasis added). Consequently, in Delaware the *sine qua non* of the intentional tort exclusion is the existence of some intent to bring about a result which will infringe upon the interest of another in a way that the law forbids.

■ Delaware does not recognize acts of self-defense as invading the interest of another in a way that the law forbids. To the contrary, persons acting within the scope of 11 *Del.C.* § 464 is justified in using force to protect themselves. *Camac v. Hall,* Del.Super., 698 A.2d 394, 398 (1996). Thus, as long as a defendant is acting under the justification of self-defense, the intentional tort exclusion is not triggered as the defendant has not illegally infringed on the rights of another.

In reaching this conclusion this Court finds itself in agreement with a number of jurisdictions which also find that acts of self-defense do not fall within the scope of the intentional tort exclusion. *See e.g.s, Vermont Mutual Insurance Co. v. Singleton,* 316 S.C. 5, 446 S.E.2d 417 (1994); *Transamerica Ins. Co. v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984) (en banc); *Economy Fire & Casualty Co. v. Meyer,* Minn.App., 427 N.W.2d 742 (1988); *Berg v. Fall,* 138 Wis.2d 115, 405 N.W.2d 701 (1987); *Preferred Mut. Ins. Co. v. Thompson,* OH.Supr., 491 N.E.2d 688 (1986); *Allstate Ins. Co. v. Novak,* 210 Neb. 184, 313 N.W.2d 636 (1981); *Mullen v. Glens Falls Ins. Co.,* 73 Cal.App.3d 163, 140 Cal.Rptr. 605 (1977).

Based on the foregoing this Court concludes that the language of the "expected or intended" exclusion is unambiguous. The exclusion is intended to prevent insureds from obtaining coverage for their own intentionally tortious acts. When one acts in self-defense, he is not acting in an intentionally tortious manner. This conclusion holds true even if this Court were to find that the "expected or intended" language is ambiguous when applied to acts of self-defense. This is so as this Court determines that Deakyne's interpretation of the exclusion, that it is triggered upon the finding of intentionally tortious conduct, reflects a reasonable reading of the policy language. Because ambiguities in the policy language must be interpreted against the insurer, this Court would be required to accept the insured's reasonable interpretation of the policy.

## IV.

The burden of showing that the exclusion in an insurance policy applies rest on the insurer. Here, Selective has failed to show that the "expected or intended" exclusion was triggered by David Deakyne's act of self-defense. The "expected or intended" exclusion is triggered when the insured acts in an intentionally tortious manner. In Delaware, acts of self-defense are not intentionally tortious. Defendant's cross-motion for summary judgment is DENIED. Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**